UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DARREN BOSSETT,

                          Petitioner,

       -against-

HAROLD D. GRAHAM, Superintendent,
     Auburn Correctional Facility,

                          Respondent.
------------------------------------------------------------x

**MEMORANDUM & ORDER**

09 CV 2054 (RJD)

DEARIE, Judge.

      Petitioner Darren Bossett was convicted, following a jury trial before Justice John Latella

in New York Supreme Court (Queens County) of multiple counts of first-degree robbery,

possession of stolen property and related weapons charges, and sentenced principally to multiple,

concurrent terms of 21 years. The Appellate Division affirmed petitioner's conviction, People v.

Bossett, 45 A.D.3d 693 (2d Dep't 2007) and denied a subsequent motion to reargue.[1]  The New

York Court of Appeals denied leave to appeal.  People v. Bossett, 10 N.Y.3d 860 (2008).

Petitioner now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

      For the reasons set forth below, the application is denied and the petition is dismissed.

## CONTROLLING STANDARDS

      The requirements for habeas relief under the Antiterrorism and Death Penalty Act of

1996 ("AEDPA"), as elucidated by recent Supreme Court holdings, are well-established and

---

[1] The order denying the motion to reargue the appeal is not reported and has not been furnished
to the Court as part of the state court record.  The Court's file, however, does include the motion
papers as well as references by both parties to an Appellate Division order dated March 11, 2008
denying a motion to reargue the appeal.

formidable.  See, e.g., Bobby v. Dixon, 565 U.S. __, 132 S. Ct. 26 (2011) (per curiam); Renico v. Lett, 559 U.S. __, 130 S. Ct. 1855 (2010).  As the Court stated in Renico, in a summary of its fifteen years of AEDPA jurisprudence:

> We have explained that an unreasonable application of federal law is different from an incorrect application of federal law.  Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must be objectively unreasonable.  This distinction creates a substantially higher threshold for obtaining relief than de novo review.  AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.

130 S. Ct. at 1862 (all internal quotations and citations omitted).  The Court's post-Renico, *per curiam* distillation of the habeas standard is even more emphatic: "a state prisoner seeking a writ of habeas corpus from a federal court must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Bobby, 565 U.S. at __, 132 S. Ct. at 27 (internal quotation and citation omitted).

As discussed below, petitioner has not made these extraordinary showings with respect to any of his six claims.

## DISCUSSION[2]

I.    The Sufficiency Claim

Petitioner's first claim is an abstract invocation of his due process right to be convicted by proof beyond a reasonable doubt.  Petitioner, however, failed to exhaust this claim by first raising it on direct appeal, and has made no attempt to excuse the procedural default by interposing an ineffective assistance of counsel claim here or in state court.  Accordingly,

---

[2] The parties' familiarity with the record is assumed.  Portions are discussed only in the context of the legal claim to which they pertain.

petitioner's sufficiency claim is not a basis for habeas relief.

In any event, the claim is frivolous. Although petitioner uses words such as "failure of proof," he does not attempt to identify any particular shortcoming in the case against him. Further, although not presented with an express sufficiency claim, the Appellate Division nevertheless found, for purposes of declaring a different claim of error to be harmless, that the evidence of petitioner's guilt was "overwhelming." Bossett, 45 A.D.3d at 694. Assuming petitioner would have to show for section 2254 purposes that *that* determination was factually unreasonable, or an unreasonable application of the Supreme Court's sufficiency standards,[3] it would be impossible for him to do so, as there was abundant proof of his guilt, principally through the testimony of the six robbery victims and the three police officers who witnessed the crime's denouement.

More particularly, the testimony established that petitioner was wearing a distinctive jacket (described by witnesses as black leather with either white stripes or the American flag on the back) when, accompanied by his brother and a third man, he approached a crowd outside a pizzeria. At gunpoint, petitioner and his accomplices stole the victims' jewelry and electronics. Happening upon the crime in progress while on routine surveillance, three officers witnessed petitioner's flight, pursued him, and within less than half an hour, apprehended him only a block from the scene of the crime and in possession of several of the items reported as stolen. Petitioner's distinctive jacket was later found in a yard from which he had emerged in the course of the chase. In a promptly conducted showup, all six robbed individuals immediately identified petitioner. All six also testified at trial two years later, where two could again identify petitioner

---

[3] See Jackson v. Virginia, 443 U.S. 307 (1979) (evidence is sufficient if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"); Cavazos v. Smith, 565 U.S. __, 132 S. Ct. 2, 3 (2011) (per curiam) ("A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury").

as the robber wearing the distinctive jacket. One of the victims also testified that petitioner had held a gun to his forehead during the robbery.

Petitioner cannot show that it was objectively unreasonable for the Appellate Division to have concluded that, viewing this evidence in the light most favorable to the prosecution, it would satisfy a rational jury, beyond a reasonable doubt, that petitioner committed the crimes for which he was convicted. The sufficiency claim, therefore, is not a basis for habeas relief.

II.     The Prosecutorial Misconduct Claim

Petitioner next claims that the prosecutor's conduct on summation and during re-direct examination of a state witness denied him a fair trial.

*a) Summation.* Petitioner complains that assistant district attorney Joseph Brogan made numerous inappropriate remarks during his summation. Among other things, Mr. Brogan called petitioner "stupid," described the police as "valiant and competent," said that the identification witnesses were "reliable" and "truthful," told the jury that petitioner and his brother "knew they were guilty," and argued that the "wicked flee." The trial court sustained many of the defense objections to Mr. Brogan's remarks and instructed the jury to disregard what Mr. Brogan had just said, and at one point the court even warned the prosecutor not to "attempt in any way to shift the burden of proof." Before Mr. Brogan had completed his summation—although after he had been speaking for a full hour—the Court stated, "Mr. Brogan, I think you are finished." The defense then moved for a mistrial on the basis of the summation. The court denied the motion, noting that (i) with respect to certain remarks, "Counsel objected, the Court sustained the objections and instructed the jury to disregard those comments," (ii) certain other comments "were not inappropriate as they were responsive to arguments made by defense counsel," (iii) in any event the court had "g[iven] instructions to the jury to disregard the inappropriate remarks of

Mr. Brogan,"and (iv) the court had also "reminded the jury that the burden of proof is on the

People and that Mr. Brogan was not to vouch for the credibility of his witnesses." The following

day, the prosecution asked that "the People be given an opportunity to finish their summation,"

which the court denied, noting that Mr. Brogan "had certainly an hour, perhaps even more than

an hour, to make [his] argument," and that, "[t]he reason the court [felt it] necessary to put a

constraint on the closing was . . . because [it] was more concerned with the fairness of th[e]

proceeding." Tr. at 1650.

      The Appellate Division found that:

> Although the prosecutor made certain remarks during his
> summation which constituted improper vouching for the credibility
> of the People's witnesses and exceeded the bounds of permissible
> comment, any prejudice caused by those remarks was dissipated
> when the [trial court] sustained the defendant's objections and
> provided forceful and clear curative instructions to the jury
> immediately after each improper remark, and then again during its
> final charge.

Bossett, 45 A.D.3d at 694. The Court further found that, "[i]n any event, the prosecutor's

remarks constituted harmless error." Id.

      Petitioner cannot show that the Appellate Division's conclusions require federal habeas

relief.  First, the portion of the Appellate Division's decision that finds the prosecutor's remarks

to be improper relies solely on New York law; the determination that any such error was

harmless is, likewise, is a question of state law. Freeman v. Kadien, __ F.3d __, __, 2012 WL

2551092, *4 (2d Cir. July 3, 2012) ("A harmlessness determination regarding an underlying error

of state law does not implicate a freestanding federal constitutional right.  Rather, the

harmfulness of evidence admitted in violation of state law is itself a question of state law").

Questions of state law, of course, are not even subject to habeas review. Id. ("'[I]t is not the

province of a federal habeas court to reexamine state-court determinations on state-law

questions'") (quoting, Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).

Alternatively, to the extent the Appellate Division's determination may be read as rejecting an implicit claim that the prosecutor's summation rendered the trial fundamentally unfair, petitioner likewise cannot show that determination to be an objective unreasonable application of the Supreme Court's trial fairness holdings, which require, for an error to be of constitutional dimensions, a level of prejudice not present here.  See generally Darden v. Wainwright, 477 U.S. 168, 181 (1986) (for there to be an error of constitutional magnitude, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned . . . [t]he relevant question  . . . is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Id. (internal citations and quotations omitted). [4]

*b) Re-Direct Examination of Witness Angel Rosario*

Petitioner's claim that he was denied a fair trial because a single, non-crucial prosecutorial question may have exceeded the scope of re-direct is frivolous and has no place in a habeas petition.  Indeed, the gravamen of petitioner's grievance is not entirely clear: he reiterates the undisputed fact that, after the defense extensively cross-examined one of the victim-witnesses about what he saw during the robbery, the state, on re-direct, asked the witness if he noticed petitioner making any gestures toward him during the commission of crime, and the witness replied that petitioner had nodded at him.

___

[4] Further still, to the extent the Appellate Division's harmless determination is analytically separable on the facts presented here, petitioner would fail, for reasons just discussed, in any effort to show that the applicable *federal* harmlessness standard was applied unreasonably. See Fry v. Pliler, 551 U.S. 112, 121-22 (2007) ("in §2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard [of Brecht v. Abrahamson, 507 U.S. 619 (1993)] whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard [of Chapman].")

6

In any event, the Appellate Division found that, "[a]ny alleged error regarding the prosecutor's going beyond the proper scope of redirect examination in his questioning of one of the complainants regarding the defendant's nodding at him during the robbery was harmless in light of the overwhelming evidence of the defendant's guilt and the absence of a significant probability that the jury would have acquitted the defendant had it not been for this error." Bossett, 856 N.Y.S.2d at 694.  Because the Appellate Division's harmlessness determination regarding a state law evidentiary question is itself a question of state law only, Freeman, 2012 WL 2551092 at 4, petitioner's challenge to the scope of the prosecutor's redirect does not even present a question subject to habeas review.  Alternatively, given the strength of case against him, petitioner cannot show the Appellate Division's determination to be an unreasonable application of the constitutional (i.e., Brecht) harmless error standard.

III.     The Suggestive Showup Claim

Petitioner argues that a showup is inherently suggestive, and that his was especially so because he was handcuffed, "flanked by numerous uniformed police officers," and "awashed in flood lights set up by police emergency services units," and also because the police had brief access to the victims before the showup.  (The extent of this access is not clear from the record: officers escorted the victims in their vehicle from the scene of the crime to the scene of the showup, but that appears to have been a distance of approximately a single block).  Petitioner further argues that the "collective viewing" (by a group of several victims) "resulted in a collective identification, which may have influenced the witnesses who might not have been sure who robbed them[] and fortified the certainty  of otherwise tentative identification."

Petitioner's suggestive identification claim is barred from habeas review because the Appellate Division expressly rejected the claim as unpreserved.  The Appellate Division

concluded that "[t]he defendant's contention, raised in his supplemental pro se brief, that the

showup identification was unduly suggestive because of certain circumstances, is unpreserved

for appellate review since he failed to raise this specific argument at the *Wade* hearing." Bossett,

45 A.D.3d at 694. The state appellate court also "decline[d] to reach [the claim] in the exercise

of [its] interest of justice jurisdiction." Id.

The state court's rejection of petitioner's suggestive-identification claim on an

independent and adequate state procedural ground bars that claim from habeas review.[5] See

generally Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); Lee v. Kemna, 534 U.S. 362,

375 (2002); Monroe v. Kuhlman, 433 F.3d 236, 240 (2d Cir. 2006).

In any event, petitioner's suggestive-showup claim would not entitle him to habeas relief.

As the hearing court concluded, the showup was not unduly suggestive because it was part of

"one unbroken chain of events – crime, pursuit, apprehension, and identification," and the

collective identification was reasonable under the circumstances.[6] The showup was permissible

because it was the result of exigent circumstances rather than tactical design or intentionally

unfair police procedures. See Perry v. New Hampshire, 565 U.S.__, 132 S. Ct. 716, 725 (2012)

("due process concerns arise only when law enforcement officers use an identification procedure

that is *both* suggestive *and unnecessary*") (emphasis added) (citing Manson v. Brathwaite, 432

U.S. 98 (1977)). Further, as the Supreme Court has made clear, the dispositive concern is

reliability: even a suggestive procedure requires suppression of the identification only when a

---

[5] See N.Y. Crim. Proc. Law §470.05(2) (requires that an error to be reviewed on appeal be preserved in the trial or hearing court); Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (New York's contemporaneous objection rule is "firmly established and regularly followed" for purposes of the independent and adequate state law doctrine) (internal citation omitted).

[6] The record quotes from but does not contain an actual copy of the hearing court's decision. Court staff asked respondent to search for a copy but none was produced. Nevertheless, respondent's brief reports the contents of the hearing court's decision, and petitioner does not dispute its accuracy.

"very substantial likelihood of irreparable misidentification" occurs.  Manson, 432 U.S. at 106-107 (internal quotation omitted).  The record in this case gives rise to no such concern.

IV.    The Confrontation Clause Challenge
       to the Admission of the 911 Calls

Assuming that petitioner's confrontation clause challenge to the admission of the recordings of two 911 calls is even properly before this Court, it is wholly meritless.[7]  One of the calls was from a victim calling for help, and the other was from a witness to the crime, and both were made at or near the scene of the crime while the perpetrators were fleeing.  The callers' statements were not "testimonial" within the meaning of Crawford v. Washington, 541 U.S. 36 (2004); rather, their "primary purpose" was clearly "to enable police assistance to meet an ongoing emergency."  Michigan v. Bryant, 562 U.S. __, 131 S. Ct. 1143, 1154 (2012) (quoting Davis v. Washington, 547 U.S. 813, 822 (2006)).

V.    The "Constructive Amendment" Claim

Petitioner complains that the trial court's charge to the jury failed to instruct on acting in concert.  He argues that the alleged omission amounted to a constructive amendment of indictment, which included an acting in concert theory in the robbery counts.  The claim is frivolous: a correct statement of the law of acting in concert appears in the charge.  See Proceedings Oct. 12, 2004, at pp. 1669-1672.  The Appellate Division's silent rejection of this

---

[7] By this Court's reckoning, the issue is unexhausted because, although it was raised in petitioner's supplemental pro se appellate brief, it was not first pursued in the trial court.  See Proceedings, Sept. 27, 2004 at p. 63 (trial counsel *joins* state's motion for the admission of the 911 tapes).  It is therefore unclear whether the Appellate Division in fact reached this issue on the merits when it concluded its decision with this statement: "The defendant's remaining contentions raised in his supplemental pro se brief are without merit."  Bossett, 45 A.D.3d at 695.  To the extent the Appellate Division forgave the failure to preserve and did intend to deny the claim on the merits, this Court concludes that that denial is not an unreasonable application of Davis v. Washington and Michigan v. Bryant.

claim is therefore not an unreasonable application of controlling Supreme Court law.  See
generally Cupp v. Naughten, 414 U.S. 141, 146 (1973).

VI.    The Ineffective Assistance of Counsel Claim

      Petitioner cannot conceivably show that the Appellate Division's silent rejection of this
claim reflects an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984).  As
the Supreme Court has explained, "[e]stablishing that a state court's application of Strickland
was unreasonable under § 2254(d) is all the more difficult [because] [t]he standards created by
Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review
is doubly so."  Harrington v. Richter, 562 U.S. __, __ 131 S. Ct. 770, 788 (2011) (internal
quotations and citations omitted).

      Petitioner lists four alleged deficiencies: he faults counsel for failing to preserve a
sufficiency claim, failing to challenge the admission of the 911 tapes, failing to request a missing
witness charge, and failing to have a trial strategy or present a defense.  Petitioner cannot show
that the Appellate Division unreasonably applied Supreme Court law in rejecting his
ineffectiveness claim because each of his attacks on counsel is wholly meritless: this Court's
discussion of the sufficiency and 911 issues disposes of those branches of the claim; petitioner
has not shown that there was a legal basis for the missing witness charge; and the record shows
that through vigorous cross-examination and in opening and closing arguments, counsel
advanced the theory that the victims' testimony was unreliable and that reasonable doubt existed.
Further, in light of the strength of the state's case, petitioner could not show that any alleged
deficiency in counsel's performance prejudiced him within the meaning of Strickland.

**CONCLUSION**

Petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 is denied and

the petition is dismissed.  Because petitioner has not "made a substantial showing of the denial of

a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue.  The

Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good

faith.  Coppedge v. United States, 369 U.S. 438 (1962).  The Clerk of the Court is directed to

close this case.

SO ORDERED.

Dated: Brooklyn, New York
     July 12, 2012

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge

11